STEVEN N. WILLIAMS (Cal. SBN 175489)
swilliams@cpmlegal.com
NANCI E. NISHIMURA (Cal. SBN 152621)
nnishimura@cpmlegal.com
MATTHEW K. EDLING (Cal. SBN 250940)
medling@cpmlegal.com
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Plaintiff and the Putative Class*

**Filed**

SEP - 1 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT CALIFORNIA

**ADR**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

**KEVIN KHOI DUY TRAN,**
individually and on behalf of all others
similarly situated,

               Plaintiffs,

   vs.

**APPLE, INC.; and**

**AT&T MOBILITY, L.L.C.**

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. **C09 04048**

**CLASS ACTION COMPLAINT** HRL

**JURY TRIAL DEMANDED**

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   **INTRA-DISTRICT ASSIGNMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  **THE PARTIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  **JURISDICTION AND VENUE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    **FACTUAL ALLEGATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.    History of the iPhone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.    Multimedia Messaging Services Are Not Available on the iPhone . . . . . . . . . . 10

     C.    Defendants Represent Multimedia Messaging Services and Data Tethering Would Be Available Features for the iPhone 3G-S and the OS 3.0 Operating System . . 11

     D.    Multimedia Messaging Services Not Available at Launch . . . . . . . . . . . . . . . 15

     E.    Defendants Have Failed to Deliver on Their Representations . . . . . . . . . . . . . 18

VI.  **CLASS ACTION ALLEGATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII. **CAUSES OF ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     **FIRST CAUSE OF ACTION**
     Violation of Business and Professions Code §§ 17500 *et seq.*
     False Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     **SECOND CAUSE OF ACTION**
     Breach of Implied Warranties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     **THIRD CAUSE OF ACTION**
     Unjust Enrichment/Restitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     **FOURTH CAUSE OF ACTION**
     Violation of Business and Professions Code §§ 17200 *et seq.*
     Unlawful, Fraudulent, and Unfair Business Acts and Practice . . . . . . . . . . . . 24

VIII. **PRAYER FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**JURY TRIAL DEMAND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**CLASS ACTION COMPLAINT**

i

Plaintiff **Kevin Khoi Duy Tran** ("Plaintiff"), individually and on behalf of the Class described below, brings this action for damages and injunctive relief pursuant to California's Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200, *et seq.;* the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.;* and for violations of California common law against Defendants Apple, Inc. ("Apple") and AT&T Mobility, L.L.C. ("AT&T") (hereinafter referred to collectively as "Defendants"):

## I.

## INTRODUCTION

1.      The iPhone is one of Apple's signature products and is a market leader in the smartphone market. The launch of the iPhone 3G-S in June of 2009 was one of the most highly anticipated consumer product events in 2009. Among the most prominently advertised functions of the iPhone 3G-S was its ability to provide **Multimedia Messaging Services ("MMS")** and **Data Tethering**. In the packaging provided with the iPhone 3G-S, MMS is prominently featured under the heading "Send messages" in which a photo is included in the text (indicating the iPhone is MMS capable) and under the heading "View photos" where MMS appears to be a feature on the iPhone:




2.     When consumers bought the iPhone 3G-S in June of 2009, they quickly found out that (1) MMS messaging services *was not available*; and (2) Data Tethering services were not available.  The advertising package provided to consumers prominently shows images of an iPhone with MMS messaging services and creates the false impression that MMS is available to purchasers of the iPhone 3G or iPhone 3G-S.  Data tethering is also prominently advertised as a feature for the iPhone 3G and iPhone 3G-S.  The advertising materials from Defendants stating that certain features would be available after the release of the iPhone 3G-S and the OS 3.0 operating system, were false and misleading.  In fact, the iPhone 3G and iPhone 3G-S *did not* have the capabilities promised by Defendants, notwithstanding the public statements of Defendants.

3.     The iPhone has been one of the most popular electronic products sold in the United States and has provided billions of dollars in revenue to both Apple and AT&T.  For the fiscal year 2008, Apple reported over $1.8 billion in revenue from the sale of iPhones and related products and services.  According to Gartner, a leading industry publication, in less than two years Defendant Apple gained a 10.8% market share of global smartphone sales.  The introduction and success of the iPhone has transformed Apple into one of the largest smartphone developers in the United States.  Prior to the iPhone, Apple had no presence in the smartphone market.

4.     Through an exclusivity agreement that was entered into when the iPhone was originally launched, AT&T is the sole authorized telephone carrier for the iPhone.  AT&T's ability to compete with other telecommunications companies, such as Verizon, is significantly enhanced by its close relationship with Apple and its now iconic iPhone.

5.     As such, both Apple and AT&T are strongly motivated to engage in whatever practices are necessary to maintain and protect the iPhone's market share in the smartphone industry.

6.     The recent release of the iPhone 3G-S, the third generation of the iPhone product line, along with the simultaneous release of Operating System ("OS") 3.0 was one of the most highly anticipated events in the smartphone industry.  Apple and AT&T

aggressively advertised for months that they were able to provide a variety of functions that were highly desired by pre-existing and potential iPhone customers. The advertising campaign only strengthened closer to the release date for the iPhone 3G-S and OS 3.0. Amongst the most highly anticipated functions for the iPhone 3G-S was the ability to transmit Multimedia Message Service ("MMS") messages, a function that was not available on prior versions of the iPhone.

7.      Since the launch of the first version of the iPhone in June of 2007, Apple and AT&T have been unable to provide MMS or Data Tethering services to their customers. Over the last two years, other major smartphone developers, such as Research in Motion (the developer of the Blackberry), Nokia, Samsung and Palm, have developed advanced smartphones that compete against the iPhone. These phones were able to provide MMS messaging services, a function that Apple and AT&T could not provide.

8.      In addition, Defendants advertised that with the launch of the iPhone 3G-S and OS 3.0 in June of 2009 they would be able to provide Data Tethering, a function that is generally available and expected by the majority of smartphone users. Indeed, many wireless telephone service providers provide Data Tethering as a standard function in the overall wireless and data service plan. Data Tethering permits users to connect their wireless device to their laptop and access a wireless network via the wireless device. The iPhone since its inception has been unable to provide Data Tethering services. This, like MMS messaging services, was a promised feature with the launch of the iPhone 3G-S and OS 3.0. Both features were promised but remain undelivered.

9.      **MMS** has become an increasingly important function for smartphone users. According to CNET news reporter Marguerite Reardon, "MMS is practically a standard feature on many new phones sold today." The fact that it is now readily available on a wide variety of phones means that customers expect to be able to have this function.

10.     **Data Tethering** has topped iPhone users' wish list for two years since the launch of the original iPhone.

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**CLASS ACTION COMPLAINT**                                          3

11.     Rival smartphone developers have been able to reach rough parity with Apple and AT&T and the iPhone due to their ability to provide functions such as MMS and Data Tethering to their customers.

12.     In order to maintain their dominant market leadership position, Defendants began to aggressively promote an advertising campaign timed to coincide with the release of the iPhone 3G-S and the new OS 3.0 for those who owned older versions of the iPhone. This advertising campaign made representations that proved to be ***false and misleading*** when the Defendants failed to deliver promised functions such as MMS and Data Tethering services. In a June 2009 article, CNET reporter Marguerite Reardon wrote that Apple announced that the new 3.0 version of the iPhone operating system "will support multimedia messaging." Absent from that announcement was the failure by Apple to explain that the iPhone lacked carrier support for MMS messaging. Without carrier support from AT&T, the exclusive service provider for the iPhone, the purported ability of the operating system to handle MMS messaging is meaningless. In a special 10-minute video released by Defendants, Apple promised that several features would be available with the launch of the iPhone 3G-S. MMS messaging services is one of the features prominently advertised and images from the "Guided Tour" video misleadingly demonstrate MMS being used on the iPhone:



LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY








13.     In addition, the exterior packaging for the iPhone 3G-S makes no mention that there are several promised features that would be absent:

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

14.     Defendants knew that many customers, including pre-existing and potential iPhone customers, expected the MMS and Data Tethering function. This expectation was heightened by the nature of the aggressive advertising campaign launched by the Defendants. Defendants' business conduct has been unlawful, unfair and fraudulent and their advertising campaign relating to MMS has been unfair, deceptive, untrue and misleading.  As a result of Defendants' wrongful conduct, consumers have suffered a pecuniary loss as they have either acquired an iPhone or continued to own an iPhone and have paid monies for the acquisition of the iPhone and for AT&T's telephone services without receiving the services they were led to believe would be available.  At the same time, Apple and AT&T have been enriched due to their deceptions.

15.     In *fine print disclosures* only found on the Apple website and put up <u>after</u> the successful launch of the iPhone 3G-S, Defendants vaguely indicate that Defendants **may** be able

1  to provide MMS messaging services by "late summer." This ambiguous attempt to correct

2  Defendants' aggressive and false earlier marketing campaign does not rectify Defendants'

3  violations of California's unfair business practices and unfair competition laws.

4       16.    In addition, Defendants' failure to provide Data Tethering services, which is a

5  standard smartphone feature, remains unexplained. After promising this feature, Defendants are

6  currently noncommittal regarding whether and when Data Tethering services will be provided.

7       17.    Defendants have failed to provide MMS. When Plaintiff and other members of

8  the Class approach sales personnel at Apple and AT&T stores about the lack of MMS messaging

9  services, Defendants' sales personnel are trained to tell customers that "summer is not over yet"

10  and it is coming. This standard statement is no remedy for Apple and AT&T's unfair business

11  practices. As to Data Tethering, the Defendants have disavowed any dates. While promising

12  that this function will be provided, Defendants have not committed to provide such services by

13  any date certain.

14       18.    This class action seeks to remedy the deceptive and misleading practices of

15  Defendants Apple and AT&T in seeking to maintain and protect their market leadership position

16  in the smartphone market in the United States by falsely indicating that they would be able to

17  provide certain functions such as MMS messaging services and Data Tethering. The MMS and

18  Data Tethering functions are extremely important to smartphone customers.

19       19.    Plaintiff Kevin Khoi Duy Tran is an owner of the iPhone 3G-S and acquired

20  it shortly after its release based on the false and misleading advertising campaign of the

21  Defendants. Plaintiff purchased the iPhone 3G-S and continues to pay for AT&T's telephone

22  services and expected that he would be able to have MMS messaging services and Data

23  Tethering on his iPhone. To date, Plaintiff's iPhone does not have either.

24       20.    Defendants' conduct is without legal justification and is unfair, unlawful, untrue

25  and misleading. Defendants' customers have been deceived by Defendants' advertising

26  campaign regarding the promised functions of the iPhone. Defendants unfairly and illegally

27  sought to maintain and protect their dominant market position through an advertising campaign

28  that promised functions that Defendants knew were important for remaining competitive and

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**CLASS ACTION COMPLAINT**       7

maintaining customers in the smartphone industry. Defendants knowingly engaged in a false and deceptive business campaign, to the detriment of consumers and customers, in order to ensure the successful launch of the iPhone 3G-S and OS 3.0 operating system.

21. As a result, Plaintiff and similarly situated customers have been damaged by, *inter alia*, having to pay to acquire an iPhone and to pay monthly AT&T telephone carrier fees due to the unfair and misleading business practices of Defendants.

22. Plaintiff, individually and on behalf of all others similarly situated, seek damages, restitution, disgorgement of profits, costs of suit, declaratory relief, and injunctive relief to prevent Defendants from continuing to engage in these unfair and unlawful business practices

## II.

## INTRA-DISTRICT ASSIGNMENT

23. Pursuant to Local Rule 3-2(c), assignment to the San Jose Division of this District is proper because Plaintiff Kevin Khoi Duy Tran resides in San Francisco, California. In addition, Defendant Apple maintains its corporate headquarters in Cupertino, California, which is located in the San Jose Division of the Northern District of California. As such, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District and thus the San Jose Division of the Northern District of California is the most appropriate location for this litigation.

## III.

## THE PARTIES

**A.    Plaintiff**

24. Plaintiff **Kevin Khoi Duy Tran** ("Plaintiff") is a citizen and resident of the State of California residing in San Francisco, California. Pursuant to Defendants' aggressive advertising campaign regarding its features and functionality, including the ability to provide MMS messaging services and Data Tethering, Plaintiff purchased an iPhone 3G-S from Defendant Apple and as an iPhone customer pays Defendant AT&T monthly service charges and fees.

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**B. Defendants**

25. Defendant **Apple, Inc. ("Apple")** is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple regularly conducts and transacts business in this District, as well as elsewhere throughout the United States. Apple manufactures, markets and sells the iPhone, among other consumer electronic devices.

26. Defendant **AT&T Mobility, L.L.C. ("AT&T")** is a Delaware limited liability company with its principal place of business at 5565 Glenridge Connector 1725B, Atlanta, Georgia 30349. AT&T is a cell phone service provider that regularly conducts and transacts business in this District, as well as elsewhere throughout the United States. AT&T markets and sells the iPhone and pursuant to a written exclusivity agreement with Apple is the exclusive provider of wire and data telephone services to iPhone customers.

## IV.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (d)(2) (the "Class Action Fairness Act") because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the proposed Class are citizens of a state different then that of at least one of the Defendants.

28. This Court has personal jurisdiction over Defendants and venue is proper because a substantial portion of the wrongdoing alleged in this Complaint took place in this state; Defendants are authorized to do business here and do conduct business here; Defendants have sufficient minimum contacts with this state; and/or Defendants otherwise intentionally availed themselves of markets in this state through the promotion, marketing and sales of their products and services in this state to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

29. In particular, Defendant Apple's principal place of business is in Cupertino, California which is located in this District. The advertisements and other wrongful business practices at issue in this litigation were, at least in part, directed from this District rendering the exercise of jurisdiction by this Court permissible.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides in this District because Defendant Apple's principal place of business is in Cupertino, California, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### V.

### FACTUAL ALLEGATIONS

**A.     History of the iPhone**

31.     The original iPhone was launched in June of 2007.  The iPhone was manufactured and developed by Defendant Apple.  The iPhone, as originally envisaged was a combination of an iPod (which stores and plays thousands of music and other multimedia files) and a wireless cellular phone.  The iPhone revolutionized the concept of applications for smartphones.  The ability of programmers to develop and sell various applications on the iPhone provided a unique creative platform for software developers.  This application platform, known as the "App Store," provided an avenue for creative development for software developers and provided users with a wide variety of unique and interesting applications.  The iPhone's sleek design and easy interface allowed the iPhone to gain a significant share of the smartphone market in the United States in a short period of time and the development of applications at the App Store has enhanced this.

32.     Pursuant to an exclusivity agreement signed between Apple and AT&T when the iPhone was first launched, AT&T is the sole authorized provider of wireless telephone services to iPhone owners.  Defendants Apple and AT&T launched the iPhone as a joint venture and both AT&T and Apple sold the iPhone in their respective stores.

33.     The original version of the iPhone was called the "2G."  In July of 2008, Defendants launched the iPhone 3G.  On June 19, 2009, Defendants launched their latest version, the iPhone 3G-S.

**B.     Multimedia Messaging Services Are Not Available on the iPhone**

34.     Since the original launch of the iPhone, one flaw of the iPhone was its inability to provide Multimedia Messaging Services ("MMS").  The iPhone was only capable of transmitting Single Messaging Service ("SMS").  Since launch, Defendants have consistently promised

⊕
LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**CLASS ACTION COMPLAINT**                                     10

iPhone users that it was working on providing MMS messaging services but did not state the

reason why MMS messaging services could not be provided.

35. Single Messaging Service ("SMS") is a communication service standardized in the GSM mobile communication system, using standardized communications protocols allowing the interchange of short text messages between mobile telephone devices.

36. Multimedia Messaging Service ("MMS") is a telecommunications standard for sending messages that include multimedia objects (images, audio, video, rich text). MMS is an extension of the SMS standard, allowing longer message lengths and allowing the transmission of multimedia files such as photographs and ringtones.

37. At first, the inability of the iPhone to provide MMS messaging services was not a significant problem for Defendants. When the iPhone was first launched, few smartphones could provide MMS messaging services at the same price point as the iPhone while providing the same functionality.

**C. Defendants Represent Multimedia Messaging Services and Data Tethering Would Be Available Features for the iPhone 3G-S and the OS 3.0 Operating System**

38. In the last two years, Defendant Apple's competitors have rapidly gained ground and many now provide MMS messaging services. As such, in order to maintain its competitive position in the market, Defendants knew that they needed to provide or at least promise pre-existing and potential smartphone consumers that MMS messaging services was an upcoming feature of the iPhone 3G and iPhone 3G-S. Defendants also represented Data Tethering as a promised feature with the launch of the iPhone 3G-S and the OS 3.0 operating system. In advance of the launch of the iPhone 3G-S and OS 3.0, Defendants advertised heavily that the iPhone 3G and the iPhone 3G-S would allow MMS messaging and Data Tethering. Defendant Apple's print and video advertisements on television, the Internet, the radio, newspapers, and direct mailers all touted these features.

39. In particular, on March 17, 2009, Apple previewed a beta version (working version) of the iPhone OS 3.0. The preview stated, "Apple also announced over 100 new

1  features that will be available to iPhone and iPod touch users this summer including, cut, copy

2  and paste, *MMS . . .*" and other features.

3      40.    The preview further states, "The new iPhone OS 3.0 will be available to iPhone

4  and iPod touch users this summer with over 100 new features including cut, copy and paste

5  which can be done within or across applications; *MMS to send and receive photos, contacts,*

6  *audio files and locations with the Messages app*; and the ability to capture and send audio

7  recordings on the go with the new Voice Memo app."

8      41.    In a footnote, the preview included the following additional mention, "MMS

9  messaging is available only on iPhone 3G; fees may apply. MMS may not be available in all

10  areas." This is misleading as it would seem to indicate that there are some areas where MMS

11  may be available. The reality is that MMS is not available *anywhere*.

12      42.    With the launch of the iPhone OS 3.0 operating system in June of 2009, MMS

13  was not an included feature for any iPhone in any area.

14      43.    On June 8, 2009, Apple reiterated in its advertising materials that, "With iPhone

15  3gS you can send photos and video by email or MMS and post them to MobileMe or YouTube

16  with just one tap."

17      44.    In June of 2009, immediately prior to the launch of the iPhone 3G-S and the OS

18  3.0 operating system, Apple's website put out an approximately 10 minute advertising video at

19  http://www.apple.com/iphone/guidedtour/ discussing the upcoming features for the iPhone 3G-S

20  and the OS 3.0 operating system. Amongst the features and functions that would purportedly be

21  available on the iPhone 3G and iPhone 3G-S was MMS messaging. MMS messaging is

22  prominently discussed as an expected feature. The video does not mention at any point that

23  MMS messaging services would not be supported at the time the iPhone 3G-S and OS 3.0 was

24  launched later that month. The Apple website also included a video specifically regarding SMS

25  and MMS at http://www.apple.com/iphone/iphone-3gs/messages.html#video.

26      45.    At the Worldwide Developers Conference San Francisco 2009 on June 8, 2009,

27  Apple announced the iPhone 3G-S and discussed its anticipated features, including MMS

28  messaging services and Data Tethering. While these features were promoted and heavily

1  anticipated, Defendants disappointed their customers by failing to provide key features or

2  information regarding those key features.

3       46.     MMS is prominently displayed in the advertising packaging that comes with the

4  purchase of a phone. Those consumers who bought the iPhone 3G-S immediately after the

5  launch of the device on June 19, 2009 were not informed that MMS would be available by "late

6  summer." Instead, the advertising material in the iPhone box clearly advertises the availability of

7  MMS. The advertising contained in the iPhone box is shown above in Paragraph 2 of this

8  complaint.

9       47.     From Apple's website:

10            ***Send MMS***
          *Take a photo or shoot some video, then send it via*

11            *Messages. You can also send audio recordings from within*
          *Messages, information from Contacts, and directions from*

12            *Maps.*

13

14       48.     A Pop-Up window on Apple's website reads:

15            Sending Photos and Videos

16            You can take a photo or make a video (iPhone 3G-S only)
          from within Messages and include it in your conversation

17            with another MMS-capable device.

18       49.     AT&T's website mentions MMS messaging in several locations:

19            <u>Messages</u>

20            Use message to send text, photos, audio, video and more.
          Forward a whole message or just the important parts.

21            <u>Messages</u>

22            Send messages with text, video, photos, audio, locations,
          and contact information. You can even forward one or

23            more messages to others.

24            <u>Send MMS</u>

25            Take a photo or shoot some video, then send it via
          Messages. You can also send audio recordings from Voice

26            Memos, contact information from Contacts, and locations
          from Maps.

27

28  ///

50. The Apple website continues to advertise both MMS and Data Tethering as promised functions for the iPhone 3G and the iPhone 3G-S. The website is the only location in which Apple provides vague statements regarding the potential future availability of these features. Attached as Exhibits A and B are excerpts from the website on MMS and Data Tethering.

51. According to CNET reporter Marguerite Reardon, AT&T already offers MMS and smartphone Data Tethering on other devices, but does not provide such features for the iPhone. Defendants have provided minimal, if any explanation, regarding the inability to provide these features. Defendants' explanations have been opaque and their promised timelines ignored. According to Ms. Reardon, "MMS is included in [AT&T's] messaging plans, which iPhone users already subscribing to those plans are *actually paying for a service they can't yet use*." This constitutes an unlawful, unfair and deceptive business practice.

52. Similarly, AT&T advertised that the 3G and 3G-S would allow MMS. MMS functionality was one of the primary reasons consumers choose to buy or upgrade to either an iPhone 3G or iPhone 3G-S.

53. Internet Tethering is also mentioned prominently on the Apple website as follows:

> Internet Tethering
>
> Surf the web from practically anywhere. Now you can share the 3G connection on your iPhone with your Mac notebook or PC laptop.

54. Currently, the Apple website states tht "Tethering is not currently offered in the U.S. and some other countries. See your carrier for availability." Despite it being a promised function of the iPhone 3G-S, the Defendants currently offer no timeline for the provision of Data Tethering services and no indication of when it will be provided. Internet forum sites expect that Defendant AT&T will require an additional $55 charge, on top of a customers' pre-existing phone plan, to be able to access Data Tethering (when such feature becomes available).

///

55.    Defendant AT&T, on its Facebook page, denied these reports, stating:

> "There are a lot of reports out there, but wanted you guys to
> know that rumors of $55 tethering plan on top of an
> unlimited data plan are false. We'll have more news to
> share when the iPhone tethering option is closer to launch."
> AT&T

56.    Defendants, however, have not indicated when the tethering option will be "closer to launch." Defendants also have not stated whether or not they do intend to charge for the Data Tethering plan, including potentially charging *more than* $55 for the tethering plan.

**D.    Multimedia Messaging Services Not Available at Launch**

57.    After the iPhone 3G came out in July of 2008, iPhone customers soon learned that true MMS services was not available. Instead of receiving actual MMS texts, when users with MMS-capable devices sent an MMS message to an iPhone user, MMS users were directed to the Internet and required to memorize and use a long code (due to the inability of pre-OS 3.0 iPhones to copy and paste texts) in order to access the message. Requiring iPhone users to access either a laptop or desktop computer in order to view MMS texts defeats the entire purpose of having MMS messages, which supposedly allow users to transmit a wide variety of multimedia files in a quick and easy manner.

58.    In response to the concerns of iPhone users regarding the lack of MMS messaging services, AT&T published this in the AT&T Answer Center page of their website for problems relating to MMS:

> "Customers who are sent an MMS message and own a non-
> MMS capable device will receive a text message instead of
> an actual MMS message. The message will contain the
> website address of www.viewmymessage.com/1 or
> www.viewmymessage.com/2 as well as a user name and
> password. To view the MMS message, please access the
> website from a computer and enter the user name and
> password provided in the text message.

59.    It is only after acquiring the iPhone that users learn that they do not have access to MMS messaging services. In response to this problem, the AT&T Answer Center provides the following information under the heading "Send, Receive or Delete a Picture, Audio or Video Multi-Media Message (MMS) with iPhone":

> **Goal:** *Send, Receive, or Delete a Picture, Audio or Video Multimedia Message with iPhone*
>
> **Symptom:** *Unable to Send, Receive, or Delete a Picture, Audio or Video Multimedia Message with iPhone*
>
> **Fix:** *iPhone does not support sending, or receiving picture, audio, or video multimedia messages*

60.     In essence, the Defendants' solution to the lack of MMS messaging services was to politely indicate to customers that Defendants indeed did not provide MMS messaging services.

61.     In early 2009, sales representatives from Defendants, in anticipation of the launch of the OS 3.0 operating system and the iPhone 3G-S represented that MMS capabilities would be available on both the 3G and the 3G-S beginning in June of 2009, when the new iPhone OS 3.0 Software Update and the new iPhone 3G-S would become available. Representatives in Apple and AT&T stores assured customers that with the release of this operating system and new iPhone, MMS would be available for the iPhone.

62.     In the spring of 2009, Defendants Apple and AT&T began an aggressive sales drive to sell its older 3G models in preparation for the launch of the 3G-S. In particular, Defendant AT&T agreed to subsidize the cost of acquiring an iPhone 3G so that consumers would pay less then $100 to buy a phone.

63.     On its website, Defendant Apple posted under the heading "iPhone OS 3.0 Software Update" that MMS would be available for iPhone customers and that customers could "send MMS messages and include photos, audio, and contact info. Even tap to a snap a picture right inside Messages." A graphic showed the familiar iPhone message bubbles with pictures inserted in the text bubble, an indication of MMS availability.

64.     As a result of the false and deceptive representations of Defendants and the intentional concealment of material information by Defendants, millions of customers either purchased the iPhone 3G or iPhone 3G-S or agreed to continue to remain loyal Apple and AT&T customers by renewing their contracts with AT&T. Indeed, Apple proudly announced that in the first three days the iPhone 3G-S was available, Apple sold over a million phones.

65. However, after owners of the iPhone 3G or iPhone 3G-S downloaded the new OS 3.0 Software Update, they soon learned that MMS remained unavailable.

66. The Apple troubleshooting page provided the following information:

> To send and receive MMS messages on your iPhone 3G, do the following:
>
> 1. Verify that your iPhone and wireless carrier meet the system requirements. To use MMS you need:
>
>    – iPhone OS 3.0 installed on iPhone 3G. The original iPhone does not support sending or · receiving MMS messages. Install iPhone OS 3.0 if necessary.
>
>    – A wireless carrier that supports MMS.
>
>    – A coverage area in which you can place and receive a call, and access the internet using Safari on your iPhone (3G network coverage recommended).
>
> 2. If this article shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below.

67. This information is false and misleading however, as Defendants now acknowledge that they cannot and do not provide MMS services for the iPhone and remain unable to do so. According to AT&T spokesman Marty Richter, AT&T does not support MMS messaging services for the iPhone.

68. Apple Customer Support states that AT&T never upgraded its towers so as to support the functionality necessary for MMS. Therefore, AT&T has been consistently unable to provide MMS services to iPhone owners.

69. In fine print disclosures, Apple and AT&T vaguely claim that "MMS Support from AT&T coming in late summer." Nowhere in the materials provided to customers and consumers at Apple and AT&T stores do Defendants inform customers that MMS functionality is currently still unavailable (even after promising that it would be an available feature with the launch of OS 3.0 and the iPhone 3G-S). Nor do the Defendants inform the customers and

1   consumers that MMS functionality <u>may</u> come in "late summer", even though similar promises

2   in the past have been made and broken.

3   **E.    Defendants Have Failed to Deliver on Their Representations**

4          70.    Defendants continue to maintain in fine print disclosures that MMS will be

5   available in "late summer" without providing any indication of what that means. Defendants

6   have made no statements regarding Data Tethering, despite it being a prominent promised

7   feature in the advertising material for the iPhone 3G-S. Defendant AT&T is unable to support

8   Data Tethering and has made no promises when it may or may not be able to provide such a

9   feature.

10         71.    It remains an open question when and if AT&T will be able to provide the

11  millions of iPhone users the MMS capabilities earlier promised. It remains even more

12  uncertain when Defendants can provide Data Tethering services. In the meantime, the millions

13  of purchasers of the iPhone 3G and iPhone 3G-S have been subjected to the deceptive and

14  misleading business practices of the Defendants as to the iPhone. As a result of such deception,

15  Plaintiff and members of the Class have suffered pecuniary loss.

16         72.    Apple and AT&T, both through their advertising campaigns and through their

17  sales process in Apple and AT&T stores, continue to misrepresent and/or conceal, suppress, or

18  omit material facts to customers in their stores about the availability of promised features and

19  capabilities for the iPhone 3G and iPhone 3G-S.

20         73.    Plaintiff is a resident of San Francisco, California and acquired his iPhone 3G-S

21  at the Apple store in San Francisco, California. Based on the aggressive advertising campaign

22  of the Defendants, Plaintiff was interested in acquiring an iPhone with certain advertised

23  features, including MMS functionality and Data Tethering. Plaintiff purchased the iPhone 3G-

24  S, which came with the latest operating system already installed. Plaintiff expected that his

25  iPhone 3G-S would have those features. To date, Plaintiff does not have access to MMS

26  messaging services and Data Tethering, even though the iPhone 3G-S and the OS 3.0 operating

27  system have been available for over two months.

28

74.     Efforts to obtain further information from AT&T and Apple are met with little substantive information.  Indeed, sales employees of the Defendants are instructed not to provide any substantive explanation about the reason for the lack of MMS services and to simply state that "summer is not yet over", referring to the fact that AT&T and Apple (in fine print disclosures) promise that MMS will be available by "late summer."  It is now currently the end of August and MMS remains unavailable, even after the launch of the OS 3.1 operating system.

## VI.

## CLASS ACTION ALLEGATIONS

75.     This action is brought by Plaintiff, individually and on behalf of all others similarly situated, pursuant to California's Unfair Competition Law and False Advertising Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* and 17500, *et seq.*  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and others similarly situated.  The Class is defined as followed:

> **All persons or entities in the United States who, between June 19, 2009 to the present, purchased or otherwise acquired an iPhone 3G or iPhone 3G-S from either AT&T or Apple for personal, family or household use.  Also included are all persons or entities who owned an iPhone 3G whose contract with AT&T expired between June 19, 2009 to the present and either entered into a new contract with AT&T or otherwise agreed to continue utilizing AT&T's wireless telephone services.  Excluded from the Class are Defendants herein, members of their immediate families and their legal representatives, parents, affiliates, heirs, successors or assigns and any other person who engaged in the improper conduct described herein (the "Excluded Persons").**

76.     Plaintiffs seek to recover damages for themselves and the Class under the Unfair Business Practices Act, Business & Professions Code §§ 17200, *et seq.;* False Advertising Law, Business & Professions Code §§ 17500, *et seq.* Breach of Implied Warranties and unjust enrichment. Plaintiff also seek an injunction prohibiting Defendants from continuing to engage in the practices described herein.

77.     Numerosity of the Class - Federal Rule of Civil Procedure 23(a)(1).  The Class is so numerous that joinder of all members is impracticable.  Defendant Apple announced that

between June 19, 2009 and June 21, 2009, it sold over a million iPhone 3G-S models over the initial three day period and that over 6 million people downloaded the OS 3.0 operating system over that same time period. While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the number is in the tens of thousands.

78. Existence and Predominance of Common Questions of Law and Fact - Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions include:

A. Whether Defendants engaged in deceptive and misleading business practices by falsely making claims that MMS messaging services and Data Tethering would be available features on the iPhone 3G and iPhone 3G-S in violation of California statutory and common law;

B. The extent to which Defendants knew that AT&T lacked the ability to support either MMS messaging services or Data Tethering and when Defendants gained that knowledge;

C. The extent to which Defendants knew the importance of these features to smartphone customers, in particular pre-existing and potential iPhone customers;

D. The extent to which Defendants could and should have conducted their advertising campaign in order to accurately represent the services Defendants would and could provide to iPhone consumers and more adequately warn customers of the unavailability of MMS and Data Tethering, the reason for that unavailability and an accurate timeline for provision of that service;

E. The extent to which Defendants marketed and advertised their iPhone 3G and iPhone 3G-S as supporting MMS with little of no mention of the fact that AT&T, with which Apple has and had an exclusive service agreement, was not equipped to provide MMS messaging services;

F. Whether the conduct complained of herein constitutes deceptive and misleading advertising in violation of Business & Professions Code section 17500, *et seq.*;

/// 

G. Whether the conduct complained of herein constitutes an unfair, illegal and/or fraudulent business practice, in violation of Business & Professions Code section 17200, *et seq.*;

H. Whether Defendants have been unjustly enriched as a result of the conduct complained of herein;

I. Whether Defendants' conduct complained of herein is intentional and knowing; and

J. Whether Plaintiff and members of the Class are entitled to damages, restitution, disgorgement of profits, declaratory relief, and/or injunctive relief, as a result of Defendants' conduct complained of herein.

79. Typicality - Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and other Class members received the same representations about the availabilty of MMS and Data Tethering on the iPhone 3G and the iPhone 3G-S. Plaintiff is a member of the Class he seeks to represent and has suffered harm due to the unfair, deceptive, unreasonable and unlawful practices of Defendants.

80. Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4) and 23(g)(l). Plaintiff will fairly and adequately represent the interests of the Classes; his interests are coincident with, and not antagonistic to those of the Class he seeks to represent. Plaintiff is represented by experienced and able attorneys, who intend to prosecute this action vigorously for the benefit of Plaintiffs and all Class members. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class members.

81. Proper Maintenance of Class - Federal Rule of Civil Procedure 23(b)(2) and (c). Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making it appropriate to provide relief with respect to the Class as a whole.

82. Superiority - Federal Rule of Civil Procedure 23(b)(3) and (c). A class action is the best available method for the efficient adjudication of this litigation because individual

litigation of Class members' claims would be impracticable and unduly burdensome to the courts, and have the potential to result in inconsistent or contradictory judgments. There are no unusual difficulties likely to be encountered in the management of this litigation as a class action. A class action presents fewer management problems and provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court. There are no other pending class actions against Defendants that seek to represent a nationwide Class, and a class action is the only feasible method by which this controversy may be resolved.

## VII.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Violation of Business and Professions Code §§ 17500 *et seq.*

## False Advertising

83. Plaintiff realleges and incorporates by reference the preceding allegations as if fully set forth herein.

84. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

85. Apple violated Business & Professions Code § 17500 when it represented, through its advertising, warranties, and other express representations in a wide variety of media outlets, including but not limited to print, television, radio and the Internet, that MMS and Data Tethering would be available features for the iPhone 3G and iPhone 3G-S.

86. Standardized practices and advertisements regarding the availability or unavailability of MMS and Data Tethering for iPhone owners, as set forth in the above Complaint, were uniformly applied and directed to Plaintiff and members of the Class. Examples of the false and misrepresentive advertisements are set forth in the above "Factual Allegations."

87. Defendants' deceptive practices were specifically designed to induce Plaintiff and members of the Classes to purchase the iPhone 3G and iPhone 3G-S and protect the market leadership positions of Apple and AT&T in the smartphone manufacturing and wireless

1   telephone service markets, respectively. Defendants engaged in marketing efforts to reach Class

2   members and induce them to purchase iPhones.

3         88.    Plaintiff and members of the Class have been injured in fact and suffered a

4   pecuniary loss as a result of spending monies to acquire an iPhone 3G or iPhone 3G-S and

5   paying monthly service charges and fees for Defendant AT&T's wireless telephone services.

6         89.    To this day, Defendants continue to engage in unlawful, unfair and deceptive

7   practices in violation of § 17500. Defendants continue to conceal the lack of MMS messaging

8   services and refuse to provide accurate information regarding when and if such functions will be

9   actually provided to iPhone owners, as advertised.

10        90.    Pursuant to Business and Professions Code § 17500, Plaintiff, on behalf of

11   himself and all others similarly situated, seeks relief as prayed for below.

**SECOND CAUSE OF ACTION**

**Breach of Implied Warranties**

14        91.    Plaintiff incorporates each and every preceding paragraph stated above, inclusive,

15   as though the same were fully set forth hereafter.

16        92.    At all times relevant herein, Apple and AT&T impliedly warranted in a uniform

17   manner to Plaintiff and the Class that the iPhone 3G and the iPhone 3G-S would have MMS

18   messaging and Data Tethering functionality.

19        93.    Contrary to Defendants' implied warranties, the iPhone 3G and iPhone 3G-S did

20   not and would not have MMS messaging service functionality and no timeline existed for when

21   such functionality would actually be provided. As such, Defendants' iPhone 3G and iPhone 3G-

22   S were not fit for the ordinary purposes for which such goods are used, and/or does not conform

23   to the promises or affirmations of fact made on the packaging and/or advertising.

24        94.    At all times relevant herein, Defendants impliedly warranted in a uniform manner

25   to Plaintiff and the Class that the iPhone 3G and iPhone 3G-S would have and did have MMS

26   messaging service and Data Tethering capabilities. Contrary to Apple's implied warranty, the

27   iPhone did not have such capabilities.

28

95.    As a direct and legal result of the breach of implied warranties by Defendants, Plaintiff and the members of the Class sustained economic damages in an amount to be determined according to proof at the time of trial.

### THIRD CAUSE OF ACTION
### Unjust Enrichment/Restitution

96.    Plaintiffs realleges and incorporates by reference the preceding allegations as if fully set forth herein.

97.    By their deceptive, misleading and unlawful conduct alleged herein, Defendants unjustly received a benefit at the expense of Plaintiffs and Class members.

98.    It is unjust to allow Defendants to retain the profits from their deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and Class members.

99.    Defendants acted with conscious disregard for the rights of Plaintiffs and Class members.

100.    Plaintiff and members of the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading and unlawful conduct.

### FOURTH CAUSE OF ACTION
### Violation of Business and Professions Code §§ 17200 *et seq.*
### Unlawful, Fraudulent, and Unfair Business Acts and Practice

101.    Plaintiff realleges and incorporates by reference the preceding allegation as if fully set forth herein.

102.    Defendants' acts and practices as described herein constitute unlawful, fraudulent, and unfair business practices, in that (1) the justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff and members of the Class, (2) Defendants' conduct is immoral, unethical, oppressive, unscrupulous, unconscionable or substantially injurious to Plaintiff and members of the Class, and/or (3) the uniform conduct of Defendants has a tendency to deceive Plaintiff and other members of the Class.



LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**CLASS ACTION COMPLAINT**                    24

103.  Defendant's unlawful, unfair and fraudulent business acts and practices include, but are not limited to, engaging in an aggressive and deceptive advertising campaign regarding the availability of MMS messaging services and Data Tethering to owners of the iPhone 3G and the iPhone 3G-S. Defendants engaged in this practice to maintain and protect the iPhone's dominant market leadership position in the smartphone industry in the United States. Defendants knew and were aware of the importance of MMS messaging services and Data Tethering to smartphone consumers and knew that the provision of MMS messaging services and Data Tethering was an important component in remaining competitive and maintaining customers in the wireless telephone industry. Defendants have not been forthcoming about the reasons for this failure, with explanations ranging from a lack of upgraded communication towers to problems with the configuration of the iPhone 3G-S in relation to AT&T's network. As a result of an exclusivity agreement between Apple and AT&T, AT&T is the sole authorized provider of wireless telephone services to iPhone owners. As such, the deceptive practices of Defendants and the inability of Defendants to provide the promised MMS services is directly related to the exclusivity agreement between AT&T and Apple. Due to the iPhone's huge market share in the smartphone market, the iPhone provides Apple with its market leadership position in the smartphone manufacturing industry and provides AT&T with a strong competitive edge in the wireless telephone services industry. As such, both Defendants were strongly motivated to engage in unfair and deceptive business practices in order to protect and preserve their respective market positions.

104.  Plaintiff and members of the Class have been injured in fact and suffered a pecuniary loss as a result of spending monies to acquire an iPhone 3G or iPhone 3G-S and paying monthly services charges and fees for Defendant AT&T's wireless telephone services.

105.  Defendants' conduct violates Business and Professions Code §§ 17200 et seq., and other similar state unfair competition and unlawful practices statutes.

106.  Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff, on behalf of himself and all other similarly situated, seek relief as prayed for below.

**VIII.**

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and all Class members pray for judgment against Defendants as follows:

1. An order certifying the proposed Class and appointing Plaintiff and his counsel of record to represent the Class;

2. An order that Defendants be permanently enjoined from their improper conduct and deceptive practices alleged herein;

3. A judgment awarding Plaintiffs and members of the Class actual damages in an amount according to proof under all causes of action herein entitling Plaintiffs and members of the Class to actual damages;

4. A judgment awarding Plaintiffs and members of the Class restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendants as a result of its unlawful, unfair, and fraudulent business practices and conduct alleged herein;

5. A judgment awarding Plaintiffs and members of the Class exemplary damages for Defendants' knowing, willful, and intentional conduct, as alleged herein;

6. For an order awarding Plaintiff and members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees, and other costs; and

7. For such additional or further relief as the Court finds just and appropriate.

Dated: 9/1 , 2009          **COTCHETT, PITRE & McCARTHY**

By: _____
           STEVEN N. WILLIAMS

**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 100
Burlingame, CA 94010
Telephone:     (650) 697-6000
Facsimile:      (650) 697-0577
E-mail:         swilliams@cpmlegal.com

*Attorneys for Plaintiff and the Class*

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**JURY TRIAL DEMAND**

Plaintiff, pursuant to Federal Rule of Civil Procedure 38, individually and on behalf of all others similarly situated, demands a trial by jury of all issues which are subject to adjudication by a trier of fact.

Dated: ___9/1___, 2009          **COTCHETT, PITRE & McCARTHY**

By: _Steven Williams_____
         STEVEN N. WILLIAMS

**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 100
Burlingame, CA 94010
Telephone:      (650) 697-6000
Facsimile:      (650) 697-0577
E-mail:          swilliams@cpmlegal.com

*Attorneys for Plaintiff and the Class*

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

**CLASS ACTION COMPLAINT**                                      27



 # Messages



Sending SMS and MMS
Watch the video

With a chat-style view and an intelligent Multi-Touch keyboard that predicts and suggests words as you type, iPhone texts smarter than any smartphone.

### Text like you talk.
Messages appear on your iPhone as an ongoing conversation, so it's easy to pick up where you left off. You can even forward one or more messages to others.

### Take suggestions.
The intelligent keyboard predicts and suggests words as you type. It also features a built-in dictionary and even learns words you use often.
How to type on the Multi-Touch keyboard

### Send MMS.
Take a photo or shoot some video, then send it via Messages. You can also send audio recordings from Voice Memos, contact information from Contacts, and locations from Maps.*
How to send photos and video










# Tethering

Now you can share the fast 3G connection on your iPhone with your Mac or PC and connect to the Internet from just about anywhere — no Wi-Fi required.

Tethering is not currently offered in the U.S. and some other countries. See your carrier for availability.

## Share the connection.

With Internet tethering on iPhone, you don't need a Wi-Fi hotspot to surf the web from your computer. Now you can share the 3G connection on your iPhone with your Mac notebook or PC laptop and connect to the Internet anywhere. When your iPhone is tethered, you can still send and receive data and make phone calls.

How to use Internet tethering

## Connect via USB.

You can also use the USB cable included with your iPhone to enable Internet tethering — and charge your iPhone at the same time. Connect your iPhone to your computer via USB and select the iPhone USB network service as your network connection. All the necessary software is automatically installed using iTunes.

## Connect wirelessly.

Wirelessly tether your computer to your iPhone using Bluetooth and you can stay cable-free. Just pair your iPhone with your Bluetooth-equipped computer, then select the iPhone Bluetooth PAN service as your network connection.



JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Kevin Khoi Duy Tran, individually and on behalf of all others similarly situated

## DEFENDANTS

Apple, Inc. and AT&T Mobility, L.L.C.

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Cotchett, Pitre & McCarthy
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Attorneys (If Known)

ADR

C09   04048   E-Filing
HRL

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

**PERSONAL INJURY**
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury— Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [X] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities – Employment
- [ ] 446 Amer. w/Disabilities – Other
- [ ] 440 Other Civil Rights

### PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
  Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Cal. Bus. & Prof. Code sections 17200, et seq. and 17500, et seq.

Brief description of cause:
False Advertising; Unfair Competition Law

## VII. REQUESTED IN COMPLAINT:
- [X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[ ] SAN FRANCISCO/OAKLAND     [X] SAN JOSE

DATE  9/1/09

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.       (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.       Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.       Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.       Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.       Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.       Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**                 Example:       U.S. Civil Statute: <u>47 USC 553</u>
                                                                  Brief Description: <u>Unauthorized reception of cable service</u>

**VII.       Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.       Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.